SAMUEL McAFEE v. McAFEE.

1. Finding of fact by the Circuit Judge, overruling the referee, approved.
2. The purchase by a son from his father of a tract of land, and the fact of payment not proved, afford no presumption that the purchase money was applied as payment to a mortgage held by the son on another tract owned by the father—certainly not in the light of the other facts of this case.
3. The release by a mortgagee of his lien on a portion of the mortgaged tract of land sold by the mortgagor to a third person, is not a satisfaction of the lien on the portion not released.
4. A purchaser at sheriff's sale with notice, has only the rights of the creditor under whose judgment the sale was made.
5. In an equity cause, the matter of costs is in the discretion of the Circuit Judge, and this court will rarely interfere.

Before Norton, J., Chester, July, 1887.

The opinion states the case.

*Mr. W. A. Sanders*, for appellant.

*Mr. J. J. Hemphill*, contra.

March 9, 1888.   The opinion of the court was delivered by

Mr. Justice McGowan.   In December, 1868, J. T. M. Mc-Afee executed to Sarah Randall a bond for $1,642.05, for a tract of land containing 534 acres.   The land was mortgaged to Mrs. Randall to secure the bond, and from time to time various payments were made.   By successive transfers, the bond and mortgage came into the hands of one N. G. Simpson, who, on February 26, 1877, assigned it to Samuel M. McAfee, a son of the mortgagor.   It seems that after Samuel M., the son, became the assignee of the mortgage, the mortgagor, J. T. M. McAfee, on November 1, 1877, sold and conveyed to him all his interest in another tract of land (298 acres) for the consideration, as stated, of $600.   There was no evidence as to how this money was paid (if paid at all), and it was claimed that it should be presumed to have been applied on the mortgage debt then owned by the purchaser.   On October 1, 1880, a portion of the land covered by the mortgage, held as assignee by Samuel M. McAfee (amount said to be 172 acres), was sold and conveyed by the mortgagor, J. T. M. McAfee, to one C. J. Moore, and as to that portion, the plaintiff, as assignee of the mortgage, released his lien by consent and without prejudice; and a part of the money paid by Moore was applied to a judgment in favor of B. Mobley, a part on a mortgage of J. & J. Hemphill, and the balance to a debt of John C. McAfee.

On May 13, 1882, this proceeding was instituted by the assignee, Samuel M. McAfee, to foreclose the mortgage on the remainder of the land; but before it came to an issue, the said lands were sold under a judgment in the case of *Wright et al.* v. *McAfee*, for $2,168.72, and of date April 25, 1882, and purchased by Samuel W. Mobley for $700, who received sheriff's

title for the same.  It seems·that J. T. M. McAfee was the ad-
ministrator of the estate of Thomas Wright, deceased, and the
aforesaid judgment (*Wright* v. *McAfee*) was rendered against him
and his sureties, of whom one was Samuel W. Mobley; and it
being to his interest to have the purchase money of the land paid
upon the judgment, he asked permission to come in and defend
the suit to foreclose the mortgage, which was granted.  He
answered, denying the important allegations of the complaint;
claimed that the alleged mortgage debt had, in fact, been paid;
and if not, that at least the rate of interest, in excess of seven
per cent., was not secured by the lien of the mortgage, and that
he had purchased the premises, had legal title thereto, and was
in possession of the same.

The first referee was John M. McNeel, who took the testimony;
but he died, and Giles J. Patterson, Esq., was appointed in his
place, who made a full and careful report, presenting alternative
views.  He found, first, as follows : "There being no evidence
how the consideration of $600 for the land conveyed by John T.
M. McAfee on November 1, 1877, to the plaintiff was paid (if
paid), the law raises the presumption that it was paid *pro tanto*
by the bond and mortgage of defendant, J. T. M. McAfee, as-
signed to plaintiff February 26, 1877.  See *Lawson Pres. Evid.*,
351.  The debt due on the bond and mortgage being less in
amount than $600, the consideration of the 298 acres of land, I
find the same is paid."  Second, if however, the court should
hold that the conveyance of the land was not in satisfaction of
plaintiff's note and mortgage, then he held that the plaintiff, as
assignee and owner of the mortgage, was entitled to maintain the
action, and that there was due on the debt the sum of $537.58,
of which the amount of $410.78 was covered and secured by the
lien of the mortgage, for the payment of which the land should
be sold, and that for the remainder of the debt, $126.80,[1] the
plaintiff should have simple judgment and execution for the same.

To this report both the plaintiff and Samuel W. Mobley ex-
cepted on various grounds, and after full hearing, Judge Norton
overruled the first view of the referee (which was, that the mort-

---

[1] This was the amount of increased rate of interest which, after the exe-
cution of the mortgage, was agreed to be paid.—REPORTER.

gage debt must be presumed to have been paid); but he confirmed the alternative view, and rendered a decree for $537.58, with interest from June 27, 1887, of which $410.78 was secured by the lien of the mortgage, and ordered the land sold to pay it, and for the remainder rendered simple judgment. As to the costs, he ordered that so much as accrued up to the time of the first order of reference, appointing J. M. McNeel referee, and the expenses of the sale, should be paid out of the proceeds of sale; but that the remainder of the costs should be paid by Samuel W. Mobley; and in case these costs are not paid or made out of said Mobley, "they should first be paid from the proceeds of sale herein ordered."

From this decree Samuel W. Mobley appeals to this court on the following grounds:

I. Because of error of the judge in decreeing that the report of Giles J. Patterson, Esq., be overruled, in so far as it holds that the plaintiff's claim set up in his complaint has been satisfied; and that report be confirmed, in so far as it finds that the sum due by J. T. M. McAfee to the plaintiff is $537.58, as of date June 27, 1887, and that the amount covered by the mortgage is $410.78.

II. Because of error in that he ordered, adjudged, and decreed the mortgaged premises described in the complaint be sold, &c.

III. Because of error in that he decreed that the plaintiff have judgment against Samuel W. Mobley for the costs and disbursements of the action, except so much as he ordered to be paid from the proceeds of sale, &c.

IV. Because of error in that he failed to decree that the bond and mortgage set up in the complaint had been paid.

V. Because of error in not adjudging that the release by Samuel M. McAfee, of his alleged mortgage on the land sold to C. J. Moore, was done with full knowledge of the pending suit of *Wright et al.* v. *McAfee, administrator*, and that as to other creditors, it was a payment *pro tanto* of his said mortgage debt—if any exist—and that said release, with knowledge as aforesaid, was a release or abandonment of the entire security, in so far as it affected the judgment of heirs of Thomas Wright and S. W. Mobley, their assignee.

VI. Because of error in not decreeing that the aforesaid release of his alleged mortgage worked a fraud upon the credits of the estate of Thomas Wright, and especially Samuel W. Mobley, the surety on J. T. M. McAfee's administration bond, and in keeping with the family arrangement developed by the evidence, and wholly in bad faith.

VII. Because of error in that he did not confirm the report of the referee, in recommending that the complaint be dismissed, &c.

The Circuit Judge overruled the report of the referee, that the mortgage debt of the plaintiff must be presumed to have been paid by the purchase money of the 293 acres of land, sold by the mortgagor to the plaintiff in November, 1877. Neither the referee nor the judge stated the grounds of his conclusion. We must assume that the judge was *prima facie* right, and it certainly would be difficult for us to give good reasons for affirming that he was in error. We have looked back carefully through the whole case, and we find that there was no direct evidence whatever upon the subject of payment. It is true that the parties were father and son, that the son purchased a tract of land from his father for $600, while he held a debt against him, secured, however, by a mortgage upon a different tract of land. But, as it strikes us, this single fact is overbalanced by the other circumstances, viz., that the debt to the son was well secured by another tract of land; that the father was embarrassed and probably needed the cash to sustain his credit and to pay other debts; that a year after the father was allowed to sell also a part of the land mortgaged to his son, all the parties agreeing, however, that the debt was subsisting, and the land not sold should still remain mortgaged to secure it; and, above all, that the plaintiff still has possession of the bond and mortgage, and has instituted suit to enforce them. It seems to us, that, under these circumstances, we ought not, upon a mere presumption, to brand the whole transaction as a fraud. "In the usual course of business, a security, when the money is paid, is either delivered up to the debtor or destroyed, and, therefore, when the fact of payment is otherwise doubtful, the possession of the entire instrument by the creditor affords a presumption that it is still unsatisfied." 3 *Stark. Evid.*, 1091.

But it is still insisted that the mortgage debt, if not paid in fact before that time, must be regarded as paid and discharged in law by the sale to Moore of a part of the mortgaged premises on October 1, 1880.   As we understand it, the claim is that the act of the mortgagee, S. M. McAfee, in releasing part of his security, necessarily had the effect of discharging his entire lien on the land retained as well as on that released.   We cannot take this view.   It is clear that the transaction, as to the sale to Moore, did not release the mortgagor, McAfee, or his heirs as to the remainder of the land; for he agreed in writing, signed in the presence of two witnesses and endorsed on the mortgage, that the release of the plaintiff, as to part of the land covered by his mortgage, "was not to affect the lien of the mortgage on the balance of the Randall tract covered by it."

Conceding this, it is contended that while the conveyance to Moore, with the plaintiff's consent, could not, and did not, release the mortgagor or his heirs as to the land retained, it did so as to all junior judgment creditors; and Mobley having purchased the land under the Wright judgment, indeed, being the owner of it by assignment, the lien in its entirety as to him was destroyed, and the land disencumbered.   At the time of the conveyance to Moore of part, the Wright judgment had not been rendered. There was no other lien but the mortgage, and, as we suppose, the parties at that time could, if they saw fit, cancel the old mortgage and execute a new one, covering only the land not conveyed to Moore.   And if so, why could they not reduce the quantity of land under the old mortgage?   "It is only after receiving notice of such liens (subsequent), that the mortgagee becomes responsible for his acts in releasing portions of the lands."   1 *Jones Mort.*, § 722.

The defendant, Mobley, cannot claim to be a purchaser for valuable consideration without notice.   He has no higher rights than the creditor under whose judgment he purchased, who had merely a lien on what is called the equity of redemption, and this he bought and nothing more.   "The purchaser's rights are measured by those of the creditor; and the creditor's rights extend only to those which the debtor has when the lien or credit commenced, together with the privilege of setting aside any rights of

which the debtor was subsequently deprived by fraud or collusion." See *Bank* v. *Campbell*, 2 *Rich. Eq.*, 185; *Moss* v. *Bratton*, 5 *Id.*, 1. This case was not at all like that of *Salinas & Son* v. *Ellis*, 26 *S. C.*, 337. In that case the debtor mortgagor tendered the whole debt which was secured · by the mortgage, and it was held that, in the light of our statute upon the subject, the lien of the mortgage, being a security, was thereby discharged.

In an equity suit, costs are within the discretion of the Circuit Judge, as a part of the relief · granted, and his direction upon the subject will rarely be disturbed.

·The judgment of this court is, that the judgment of the Circuit Court be affirmed.